USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/12/19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

-against-

RACHELL ODIASE
    a/k/a "Rachel Odiase"

                  Defendant.

---

16-cr-587 (SHS)

OPINION

SIDNEY H. STEIN, U.S. District Judge.

On March 8, 2018, a jury convicted Rachell Odiase of the felonies of money laundering, conspiracy to commit money laundering, and engaging in a monetary transaction in property derived from specified unlawful activity pursuant to 18 U.S.C. §§ 1956(a)(1)(B)(i), 1956(h), and 1957, respectively; she was acquitted of identity theft and conspiracy to commit wire fraud. During the trial, the jury heard evidence that Odiase was involved in a fraud whereby someone posed as a law enforcement official and repeatedly pressed an elderly victim to transfer large sums of cash by presenting a wholly fabricated story about her grandchild being in serious legal peril having been discovered with drugs in his apartment. (Trial Tr. ("Tr.") 28-30.) The victim transferred $300,000; $50,000 of that sum was deposited into Odiase's bank account by a participant in the scheme; and Odiase transferred that $50,000 out of her account and into an account at a different bank which was also in her name. According to Odiase, she believed at all relevant times that the $50,000 was proceeds from the sale of her inventory of goods to a foreign buyer.

Odiase has now moved for a new trial pursuant to Federal Rule of Criminal Procedure 33. (ECF No. 119.) She contends that she is entitled to a new trial because (1) the evidence presented at trial was insufficient to convict her; (2) the Court erred by allowing the jury to watch only government-selected excerpts of a video recording of Odiase's police

interview, rather than allowing Odiase to play the entire video to the jury; and (3) the government improperly shifted onto Odiase the burden to prove her own innocence.

The grant of a new trial is within the "broad discretion" of the Court and is reserved for only "the most extraordinary circumstances." *United States v. Ferguson*, 246 F.3d 129, 133-34 (2d Cir. 2001) (quoting *United States v. Sanchez*, 969 F.2d 1409, 1413 (2d Cir. 1992)); *United States v. White*, No. 10-Cr-516, 2011 WL 2207566, at *4 (S.D.N.Y. May 31, 2011). In order to succeed on her motion, Odiase must demonstrate that it would be "manifest injustice" to let the guilty verdict stand. *Ferguson*, 246 F.3d at 134; *White*, 2011 WL 2207566, at *4. Because the Court perceives no error, let alone one amounting to manifest injustice, Odiase's motion for a new trial is denied.[1]

## I. THERE IS NO LACK OF SUFFICIENT EVIDENCE TO SUPPORT THE COUNTS OF CONVICTION

Odiase first contends she is entitled to a new trial because the evidence was insufficient to find her guilty of any of the three counts on which she was convicted. Odiase's motion seeking a new trial is expressly grounded in Federal Rule of Criminal Procedure 33, although her papers cite language and authorities applicable to a Rule 29 motion for judgment of acquittal. *See* Fed. R. Crim. P. 29(a). In its opposition brief, the government treats the portion of Odiase's motion that contends the evidence was insufficient as pursuant to Rule 29. Like Odiase, the Court will treat her motion as pursuant to Rule 33, but look to Rule 29 law to decide whether the evidence was in fact sufficient to convict Odiase. The Court finds that the evidence was sufficient, and it would not be manifest injustice to let the guilty verdict stand. Indeed, there was more than adequate evidence supporting each count of conviction.

In considering a challenge to the sufficiency of the evidence to sustain a conviction, the Court "review[s] all of the evidence presented at trial 'in the light most favorable to the government, crediting every inference that the jury might have drawn in favor of the government.'" *United States v. Walker*,

---

[1] The Court denied Odiase's motion from the bench on June 1, 2018, and memorializes the reasons for that decision in this written Opinion.

191 F.3d 326, 333 (2d Cir. 1999) (quoting *United States v. Hernandez*, 85 F.3d 1023, 1030 (2d Cir. 1996)); *see United States v. Espaillet*, 380 F.3d 713, 718 (2d Cir. 2004). Mindful that "courts must be careful to avoid usurping the role of the jury," *Espaillet*, 380 F.3d at 718 (quoting *United States v. Jackson*, 335 F.3d 170, 180 (2d Cir. 2003)), the Court will not disturb the conviction "so long as '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Walker*, 191 F.3d at 333 (internal quotation marks omitted) (quoting *United States v. Tocco*, 135 F.3d 116, 123 (2d Cir. 1998)).

To convict Odiase of the three counts of conviction, the Court instructed the jury as to the essential elements that it needed to find beyond a reasonable doubt. Those elements included (1) that Odiase "knew that the property involved in the financial transaction" – the $50,000 – "represented the proceeds of some form of unlawful activity," and (2) that Odiase "knew that the financial transaction" – the transfer of the $50,000 from one bank account into another – "was designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of those proceeds." (Trial Tr. ("Tr.") 495-96, 502-03.) The latter element "requires proof that the purpose or intended aim of the transaction was to conceal or disguise a specified attribute of the funds." *United States v. Huezo*, 546 F.3d 174, 179 (2d Cir. 2008).

Odiase contends that the evidence presented to the jury was insufficient as a matter of law to establish either of those two elements.

With respect to the first challenged element – knowledge – Odiase offers a two-part argument. Relying on the jury's not-guilty verdict on the conspiracy to commit wire fraud count, Odiase first argues that the jury must have found that, as of the time the $50,000 was deposited into her account, Odiase lacked knowledge that the funds were the proceeds of the fraud; and to the extent that the jury found otherwise, such a finding was inconsistent with its not-guilty verdict on the conspiracy to commit wire fraud count. From there, Odiase infers that the jury must have found that she acquired the requisite knowledge at some point between the deposit and her transfer of the funds into a different bank account, and she contends that the evidence presented at trial was insufficient to support such a finding.

3

As an initial matter, even if Odiase were correct that the jury's verdicts were inconsistent, that generally would not by itself be a basis for granting her motion. *See United States v. Acosta*, 17 F.3d 538, 544-45 (2d Cir. 1994). Here, however, the Court agrees with the government that the verdicts can be harmonized, and therefore a new trial is not warranted on that basis. *See Ali v. Kipp*, No. 16-4225-cv, 2018 WL 2305810, at *6 (2d Cir. May 22, 2018). "Consistent with [the Court's] instruction[s]" on the counts of conviction, "a reasonable juror could conclude that, at the time [the $50,000 was deposited], the defendant knew that the money came from *some* form of criminal activity, even if there was not sufficient evidence to conclude, beyond a reasonable doubt, that the defendant participated in a conspiracy to commit wire fraud." (Gov't's Mem. of Law in Opp'n to Def.'s Mot. at 16, ECF No. 125 (emphasis added).)

More fundamentally, the Court finds that there was ample circumstantial evidence from which the jury could infer that Odiase knew the $50,000 represented the proceeds of some form of unlawful activity, at least as of the date she transferred the funds to a different account, and quite likely earlier. The same circumstantial evidence was sufficient to enable a jury to infer that Odiase knew that the transfer of the funds between bank accounts "was designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of those proceeds." (Tr. 495-96, 502-03.)

The circumstantial evidence included evidence of what the government contended were extended and repeated false exculpatory statements that Odiase made during her police interview. The interview, which was videotaped, lasted one hour and forty minutes. (Tr. 110.) During that interview, Odiase repeatedly offered an improbable explanation regarding the source of the $50,000, contending that it was proceeds from the sale of her goods to "Frank" – a foreign buyer about whom she otherwise knew essentially nothing except his name and his willingness to pay her $50,000. (*See* GX-501.) As the Court instructed at the end of the trial, the jury was entitled to find that Odiase "gave a false statement in order to avert suspicion from herself," and, if it did, the jury could, but was not required to, infer that Odiase believed that she was guilty. (Tr. 474.)

4

The circumstantial evidence also included bank records reflecting that the $50,000 transaction into Odiase's account and the $50,000 transaction between Odiase's two accounts were exponentially larger than any other single transaction in either account, which otherwise had sparse activity. (GX 301-03, 312, 401-03, 406.) From this – crediting every inference in the government's favor – the jury could reasonably have inferred that the accounts were used to house proceeds from unlawful activity.

Naturally, Odiase's transfer of the funds between her two accounts was also evidence supporting the jury's verdict. Odiase now contends (and counsel argued to the jury) that, because both accounts were in her own name, the transfer could not have been effected with the intent to conceal or disguise the nature, location, source, ownership, or control of those proceeds.

The jury was entitled to find otherwise. Specifically, it was entitled to find – especially in light of the other circumstantial evidence – that Odiase transferred the funds in order to elongate the trail from, and thereby help conceal, "a specified attribute of the funds" – their source. *Huezo*, 546 F.3d at 179. That inference would have been an especially logical one given that the jury was not presented with evidence of any other purpose for the transfer.[2] That Odiase might have been more cunning in her efforts to conceal the source of the funds – perhaps by putting the funds into an account with someone else's name – does not preclude such a finding.

Reviewing "all of the evidence presented at trial 'in the light most favorable to the government,'" and "crediting every inference that the jury might have drawn in favor of the government," the Court comfortably finds that a "rational trier of fact could have found [all of] the essential elements of the [three counts of conviction] beyond a reasonable doubt." *Walker*, 191 F.3d at 333 (quoting *Hernandez*, 85 F.3d at 1030, and *Tocco*, 135 F.3d at 123).

---

[2] In this respect, Odiase's case is different from one where ill-gotten gains are used to make "an ordinary purchase," *United States v. Stephenson*, 183 F.3d 110, 121 (2d Cir. 1999), and from the circumstances present in *United States v. Rodriguez*, a case that Odiase relies heavily upon, *see* No. 16-4177, 2018 WL 1836236 (2d Cir. Apr. 18, 2018).

5

Accordingly, the Court finds that it is not manifest injustice to let the guilty verdicts stand. There is no lack of sufficient evidence supporting conviction.

## II. DEFENDANT WAS PROPERLY NOT PERMITTED TO PLAY THE VIDEO OF THE ENTIRE INTERVIEW TO THE JURY

Odiase next contends it was manifest injustice that she was not permitted to show the jury the complete one-hour-and-forty-minute video of her interview with detectives from the Harrison Police Department once the government showed excerpts of that video. Odiase contends this was error because it violated the rule of completeness, *see* Fed. R. Evid. 106, which provides:

> If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part . . . that in fairness ought to be considered at the same time.

*Id.* Under the rule, "the omitted portion of a [recorded statement] must be placed in evidence if necessary to explain the admitted portion, to place the admitted portion in context, to avoid misleading the jury, or to ensure fair and impartial understanding of the admitted portion." *United States v. Castro*, 813 F.2d 571, 575-76 (2d Cir. 1987).

Odiase cites several omitted portions of the video that she contends implicate the rule of completeness; these portions generally fall into two sets. One set consists of statements relating to the alleged sale of her goods to "Frank," which she claimed during the interview was the source of the $50,000 deposit into her account. The second set of omitted portions exhibited her demeanor and emotional state during the interview.

The omitted portions of the video cited by Odiase do not implicate the rule of completeness; even if they did, any omissions did not constitute manifest injustice warranting a new trial.

With respect to the first set, Odiase contends that the omitted portions explained her apparent lack of knowledge about "Frank" and other details of

6

the sale,[3] and demonstrated the knowledge she did have about different details relating to the sale.[4] However, the video excerpts that were viewed by the jury reflected a rambling, shifting explanation that would not have been clarified, contextualized, or explained by the additional portions that Odiase cites, and therefore do not implicate Rule 106. *See Castro*, 813 F.2d at 575-76.

As for the second set, Odiase contends that the omitted portions would have shown her "intense emotional state," her "frustration with the detectives' failure to believe her," and her "anguish when she realized . . . that she was now going to lose the [goods] *and* the money she thought she had been paid for [them]."[5] (Mem. of Law in Supp. of Def.'s Mot. for New Trial ("Def.'s Mem.") at 17, 20, ECF No. 120.) These depictions would not have explained or contextualized any of the excerpts that were played, and therefore do not implicate Rule 106. *See Castro*, 813 F.2d at 575-76. In the extended portions that the jury did hear and see, Odiase's "intense emotional state," her "anguish," and her "frustration," were patently clear to any rational observer, of which we can presume there were twelve in the jury box.

Odiase's claim of manifest injustice is undercut for two additional reasons. First, the Court has an obligation to "exercise reasonable control over the mode and order of . . . presenting evidence so as to: (1) make those procedures effective for determining the truth; [and] (2) avoid wasting time." Fed. R. Evid. 611(a). Here, Odiase's request to show the entire video to the

---

[3] In these statements, according to Odiase's memorandum of law, she explained that "her family in Nigeria were involved and in charge of disposing of the inventory and arranging payment," that "[t]he goods were shipped a year or so before because business was bad and she was being evicted from the store and would lose her merchandise," that "Frank was referred to [her] by others in Nigeria," and that "she was relying on her family to arrange for the sale and send her the money." (Mem. of Law in Supp. of Def.'s Mot. for New Trial ("Def.'s Mem.") at 17, 19, ECF No. 120.)

[4] In this statement, according to Odiase's brief, she "name[d] and describe[d] others who were also involved with Frank as potential purchasers." (Def.'s Mem. at 17.)

[5] Odiase specifically cites instances showing her "screeching and pulling on her hair," and "get[ting] on her knees and virtually beg[ging] the detectives to believe her." (Def.'s Mem. at 17.)

7

jury would have added an hour or more to the short, two-day trial, yet rendered the video no more "effective for determining the truth." *Id.*

Second, Odiase's request to show the video was essentially an effort to lard the trial with statements that were impermissible hearsay when offered by her; they were out-of-court statements proffered for their truth. *See* Fed. R. Evid. 801(d)(2).

Accordingly, because the omitted portions of the video do not implicate Rule 106, as well as the Court's discretion and ruling pursuant to Rule 611(a) and the fact that the omitted portions were impermissible hearsay by defendant, the Court finds that it was proper to not permit Odiase to show the jury the entire interview video.

## III. THE BURDEN OF PROOF WAS NOT SHIFTED ONTO ODIASE WHEN THE GOVERNMENT CALLED THE JURY'S ATTENTION TO DEFICIENCIES IN DEFENDANT'S CASE

Finally, Odiase contends that the government improperly shifted the burden of proof onto her when the government showed the jury excerpts of the interview containing Odiase's pledges to provide the Harrison Police Department detectives with receipts and other documents to corroborate her explanation about the sale of goods to "Frank," and then elicited testimony from one of the detectives, appearing as a trial witness, that such corroborating proof was never provided by Odiase. Odiase also points to the government's summation calling the jury's attention to these deficiencies.

According to Odiase, this could have caused the jury to believe that Odiase had a burden to come forward with evidence of her innocence. However, the Court gave express and repeated instructions to the jury that the burden remains on the government at all times to prove Odiase's guilt beyond a reasonable doubt. That instruction was given twice in the middle of the government's examination of the Harrison Police Department detective – that is, when the issue arose – and also at the conclusion of each party's case, and again in the Court's charge to the jury at the end of the trial. (*See* Tr. 159, 163, 383, 385, 462.)

Odiase does not contend that the government ever commented on Odiase's failure to testify at trial. *See United States v. McDermott*, 918 F.2d 319, 327 (2d Cir. 1990). Her contention is that the government commented on the fact that she failed to give the *detectives* certain corroborating evidence she said she would during the course of the investigation. The government was entitled to call this to the jury's attention in support of its contention that the sale-of-goods explanation Odiase gave to the investigators constituted false exculpatory statements. *See United States v. Salameh*, 152 F.3d 88, 136 (2d Cir. 1998) (concluding that such comments by the government were not error even where they remarked on a defendant's failure to provide evidence at *trial*); *McDermott*, 918 F.2d at 327 (same).

Furthermore, even had the jury misunderstood the government's arguments as remarking on Odiase's failure to present the promised evidence *at trial* – and there is no evidence of that – the result would be no different. According to the U.S. Court of Appeals for the Second Circuit,

> a prosecutor is entitled to comment on [a] defendant's failure to call witnesses to contradict the factual character of the Government's case, as well as on defendant's failure to support [her] own factual theories with witnesses. It is only when the evidence that the defendant has not adduced is in the control of the defendant alone or where the jury would naturally and necessarily interpret the Government's summation as a comment on the defendant's failure to testify that the Government's comments run afoul of the Fifth Amendment.

*McDermott*, 918 F.2d at 327 (citations omitted); *see Salameh*, 152 F.3d at 136.

Here, the evidence that Odiase "ha[d] not adduced" was not "in the control of [Odiase] alone," *McDermott*, 918 F.2d at 327, but could have been offered through other witnesses or documentary evidence. The evidence she promised was in the nature of shipping receipts, invoices, business income records, tax records, photographs of her merchandise, and a phone number for individuals allegedly involved in the sale of her goods. (*See* Tr. 153-56, 162-63.) Indeed, Odiase showed the jury two shipping receipts and called a shipper to testify in her defense, and her attorney argued in summation that those documents and the shipper's testimony corroborated her sale-of-goods

9

explanation. (Tr. 309-336; DX B, C.) Given the verdict, the jury was not persuaded by that evidence.

Finally, to the extent there was any lingering error regarding a shifting of the burden of proof, it was harmless in view of the Court's instructions to the jury. *See Peakes v. Spitzer*, No. 04-Cv-1342, 2004 WL 1366056, at *18-19 (S.D.N.Y. June 16, 2004), *R. & R. adopted*, 2004 WL 1656568 (S.D.N.Y. July 23, 2004); *see also Chalmers v. Mitchell*, 73 F.3d 1262, 1267 (2d Cir. 1996) ("We assume that a jury applies the instructions it is given."); *McDermott*, 918 F.2d at 327. The Court does not believe there was any error, but if error it be, it be harmless.

Accordingly, because the government was entitled to call the jury's attention to deficiencies in Odiase's case, and because any risk of burden shifting was obviated by the Court in its repeated and clear instructions to the jury, the Court finds that there was no error in the government referring to Odiase's failure to follow up on statements she made to the Harrison Police Department detectives pledging to give them documents that corroborated her story that the $50,000 constituted proceeds from the sale of her business inventory.

## IV. CONCLUSION

For the reasons set forth above, the Court finds that Odiase has not demonstrated that it would be "manifest injustice" to let the guilty verdict stand. *Ferguson*, 246 F.3d at 134; *White*, 2011 WL 2207566, at *4. Indeed, the Court finds no error in its rulings. This case does not present "extraordinary circumstances" such that it would be appropriate for the Court to exercise its "broad discretion" to grant a new trial. *Ferguson*, 246 F.3d at 134 (quoting

*Sanchez*, 969 F.2d at 1413); *White*, 2011 WL 2207566, at *4. Accordingly, Odiase's motion is denied.

Dated: New York, New York
      June 12, 2018

Sidney H. Stein, U.S.D.J.